McCarter & English, LLP
Scott S. Christie
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-4444

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| NECA LLC and KIDROBOT, LLC, | Civil Action No. _____ |
| Plaintiffs, | |
| v. | **COMPLAINT** |
| JAZWARES, LLC and KELLY TOYS HOLDINGS, LLC, | **(DEMAND FOR JURY TRIAL)** |
| Defendants. | |

Plaintiffs NECA LLC ("NECA") and  Kidrobot, LLC ("Kidrobot") (collectively, "Plaintiffs"), both with offices at 603 Sweetland Avenue, Hillside, New Jersey 07205, as and for their Complaint against Defendants Jazwares, LLC ("Jazwares"), with offices at 1067 Shotgun Road, Sunrise, Florida 33326, and Kelly Toys Holdings, LLC ("Kelly Toys"), with offices at 4811 South Alameda Street, Los Angeles, California 90058, (collectively, "Defendants"), allege as follows:

### JURISDICTION AND VENUE

1.      This is an action for trademark infringement, unfair competition, false advertising, and false designation of origin, cancellation of U.S. Registration No. 6,654,108, and abandonment of  U.S. Application No. 97/362,430 under the Lanham Act, Title 15 U.S.C. §§ 1051 *et seq*., (the

"Lanham Act"), for unlawful and deceptive acts and practices under the laws of the State of New Jersey, and violations of federal and state common law.

2.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332(a), and 1338(a) and (b); and 15 U.S.C. §§ 1116 and 1121.  This Court has jurisdiction, pursuant to the principles of supplemental jurisdiction and 28 U.S.C. § 1367, over Plaintiffs' claims arising under the laws of the State of New Jersey.

3.      This Court has personal jurisdiction over Defendants in whole or in part arising out of Defendants' (a) transacting business within the State of New Jersey; (b) offering infringing goods and services in interstate commerce; (c) committing tortious acts in the State of New Jersey; and (d) injuring Plaintiffs and the public in New Jersey.

4.      A substantial part of the events or omissions giving rise to the claims occurred in this judicial district.  Accordingly, venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

## **PARTIES**

5.      Plaintiff NECA LLC is a limited liability company formed under the laws of the State of Delaware, with its principal place of business located at 603 Sweetland Avenue, Hillside, New Jersey 07205.

6.      Plaintiff Kidrobot, LLC is a limited liability company formed under the laws of the State of Delaware, with its principal place of business also located at 603 Sweetland Avenue, Hillside, New Jersey 07205.  Kidrobot is a wholly owned subsidiary of NECA.

7.      Upon information and belief, Defendant Jazwares, LLC is a limited liability company formed under the laws of the State of Delaware, with its principal place of business at 1067 Shotgun Road, Sunrise, Florida 33326.

8. Upon information and belief, Defendant Kelly Toys Holdings, LLC is a limited liability company, with its principal place of business at 4811 South Alameda Street, Los Angeles, California 90058.

9. Defendants have committed acts of trademark infringement and unfair competition within this judicial district.

## ALLEGATIONS COMMON TO ALL COUNTS

### Plaintiffs and the HUGME Mark

10. NECA is a leading creator, marketer, and global distributor of licensed consumer products based on some of the world's most recognizable movies, video games, comic books, and pop culture.

11. Kidrobot is a premier creator and dealer of limited edition art toys, signature apparel and lifestyle accessories.

12. Kidrobot owns the trademark HUGME (the "HUGME Mark"), which Kidrobot uses in connection with a line of vibrating plush toy characters of well-known cartoon, comic and entertainment characters, such as SpongeBob, Disney's Lilo and Stitch, and Trolls characters, that are offered for sale by both Kidrobot and NECA ("Plaintiffs' Goods"). A true and correct copy of an excerpt from Kidrobot's website reflecting use of the HUGME Mark in connection with Plaintiffs' Goods is attached hereto as **Exhibit A**. [https://www.kidrobot.com/collections/hugme].

13. Plaintiffs have continuously used the HUGME Mark in connection with Plaintiffs' Goods without interruption in commerce in the United States since at least as early as 2017.

14. As a result of Plaintiffs' long-term and prominent use and promotion of the HUGME Mark, the public has come to recognize the HUGME Mark exclusively as identifying goods that emanate from Plaintiffs.

15.     Kidrobot owns U.S. Application Serial No. 97/863,014, for the HUGME Mark in connection with "[p]lush toys; stuffed toys; vibrating plush toys; plush dolls; all of the foregoing not suitable for pets," in Class 28 (the "HUGME Application").  A true and correct copy of the record from the Trademark Status and Document Retrieval ("TSDR") database of the United States Patent and Trademark Office (the "USPTO"), evidencing both the status and ownership of the HUGME Application is attached hereto as **<u>Exhibit B</u>**.

16.     Plaintiffs own common law rights in and to the HUGME Mark throughout the United States based upon Plaintiffs' extensive use of the HUGME Mark in commerce in connection with Plaintiffs' Goods since at least as early as 2017.

17.     As a result of Plaintiffs' years of promoting, marketing, distributing, and selling Plaintiffs' Goods throughout the United States, the public has come to recognize the HUGME Mark as identifying plush toys that originate from Plaintiffs.

18.     Plaintiffs' Goods offered under the HUGME Mark are advertised and promoted by Plaintiffs at various trade shows throughout the United States and the world, such as Toy Fair, via Plaintiffs' licensing and sales force, and on the Internet, including on the website www.kidrobot.com, as well as in numerous publications.  The website www.kidrobot.com prominently displays the HUGME Mark in connection with Plaintiffs' Goods.  *See* Exhibit A.

19.     Plaintiffs offer Plaintiffs' Goods under the HUGME Mark throughout the United States in over 5,000 stores, including in Walmart, Target and Best Buy stores.  Many of the stores selling Plaintiff's Goods are located in the State of New Jersey.

20.     For more than five years and long prior to the acts of Defendants complained of herein, Plaintiffs have used the HUGME Mark continuously to designate Plaintiffs' Goods, and such use has enabled Plaintiffs to achieve notoriety among the public.  Consequently, the HUGME

Mark engenders an enormous amount of goodwill and is a distinctive symbol of such goodwill that belongs exclusively to Plaintiffs.

21.     Plaintiffs have expended considerable resources to protect, promote, and market Plaintiffs' Goods offered in connection with the HUGME Mark.

22.     Over the last five years, Plaintiffs have spent substantial amounts on advertising, promoting, and marketing Plaintiffs' Goods under the HUGME Mark in the United States.

23.     Plaintiffs promote the HUGME Mark and Plaintiffs' Goods offered in connection with those marks via television, print media, and digital media and the Internet, including social media, and industry trade shows.

24.     As a result of Plaintiffs' extensive investment of time and resources, Plaintiffs' Goods offered under the HUGME Mark have enjoyed substantial sales success, and the HUGME Mark has gained widespread consumer recognition as signifying high quality goods originating exclusively from Plaintiffs.  Plaintiffs have enjoyed millions of dollars in revenue over the last five years from the sale of Plaintiffs' Goods.

25.     As a result of Plaintiffs' lengthy and continuous use of the HUGME Mark and its efforts to advertise and promote Plaintiffs' Goods offered in connection with the distinctive HUGME Mark, the HUGME Mark has acquired secondary meaning signifying Plaintiffs and Plaintiffs' high quality goods to consumers.

26.     Plaintiffs have developed a reputation for creating high quality plush toys in the United States in connection with the HUGME Mark.  This reputation has caused the relevant public to become very familiar with the HUGME Mark.

27.     As a result of Plaintiffs' extensive advertising featuring the HUGME Mark for over five years, and the exposure of the HUGME Mark to consumers throughout the U.S. in the press

and otherwise, the HUGME Mark has become well-known among the general consuming public of the U.S., including, but not limited to, residents of the State of New Jersey.

28.     As a result of Plaintiffs' extensive use of the HUGME Mark and significant investment of time and resources in advertising and promoting Plaintiffs' Goods in connection with the HUGME Mark, Plaintiffs have developed substantial goodwill in the HUGME Mark, and that goodwill is critical to Plaintiffs' ability to compete in the highly competitive plush toy market.

**Defendants' Wrongful Conduct**

29.     Plaintiffs recently discovered that Defendants, upon information and belief with knowledge of Plaintiffs' prior rights in the HUGME Mark, have adopted and are using marks that consist of and/or include the terms HUG MEES and HUGMEES, including but not limited to SQUISHMALLOWS HUG MEES, HUG MEES BY ORIGINAL SQUISHMALLOWS, and COCOMELON HUG MEES BY SQUISHMALLOWS, in connection with plush toys (the "Infringing Goods").

30.     Plaintiffs also recently learned that Kelly Toys filed U.S. Application Serial No. 97/362,430 (the "'430 Application") for the trademark HUG MEES BY ORIGINAL SQUISHMALLOWS for "toys, namely, plush toys, not suitable for pets" in Class 28, which is currently published, and that Kelly Toys owns U.S. Trademark Registration No. 6,654,108 for SQUISHMALLOWS HUG MEES for "children's soft sculpture plush toys, not suitable for pets" in Class 28 (the "Infringing Registration").  True and correct copies of the records from the TSDR database of the USPTO, evidencing both the status and ownership of the '430 Application and the Infringing Registration are attached hereto as **Exhibit C** and **Exhibit D**, respectively.  The HUGMEES, COCOMELON HUGMEES BY SQUISHMALLOWS, HUG MEES BY ORIGINAL SQUISHMALLOWS, and SQUISHMALLOWS HUG MEES trademarks are referred to collectively herein as the "Infringing Marks."

6

31.     Upon learning of Defendants' conduct and ownership of the Infringing Registration and the '430 Application, Plaintiffs sent Defendants a cease and desist letter demanding that Defendants cease use of the Infringing Marks, abandon the '430 Application, and surrender the Infringing Registration.  Defendants refused to comply with Plaintiffs' requests, forcing Plaintiffs to bring this action.

32.     Upon information and belief, Defendants' Infringing Goods sold in connection with the Infringing Marks travel in the same channels of trade and are purchased by the same consumers.

33.     The Infringing Marks are confusingly similar to the HUGME Mark as the Infringing Marks consist of and/or include the term HUGMEES and HUG MEES, which is the phonetic equivalent of the HUGME Mark.

34.     Use and registration by Defendants of additional terms, such as COCOMELON (which refers to a cartoon character and program by the same name) and SQUISHMALLOWS, with the term HUGMEES / HUG MEES does not minimize the risk of confusion among consumers because consumers are accustomed to seeing Plaintiffs' HUGME mark used in connection with the names of cartoon characters and would assume that Plaintiffs are offering its line of plush toys depicting CoComelon characters and Squishmallows characters.

35.     Use and/or registration of marks that include the term HUGMEES / HUG MEES by Defendants in connection with identical goods, i.e., plush toys, constitutes trademark infringement, unfair competition, false advertising, and deceptive trade practices under the Lanham Act and New Jersey statutory law, and this same conduct constitutes a violation of both federal and state common law by Defendants.

36.     Defendants' wrongful conduct irreparably injures the public and Plaintiffs. Defendants deceive consumers into mistakenly believing that they are purchasing genuine

authorized goods of Plaintiffs when, in fact, they are buying goods that do not emanate from Plaintiffs.  When the goods fail to meet consumers' expectations, consumers lose the value of their hard-earned money and question the goodwill of Plaintiffs.  Defendants' Infringing Marks and Infringing Goods also infringe upon and diminish the value of the HUGME Mark.

37.     Upon information and belief, the relevant public will likely perceive Defendants' goods offered under the Infringing Marks as emanating from Plaintiffs.  This will result in not only a loss of the goodwill and reputation of Plaintiffs, but also a loss of future sale of goods offered by Plaintiffs under the HUGME Mark.

38.     Continued unauthorized use of the Infringing Marks harms Plaintiffs' reputation and goodwill because consumers mistakenly believe that the goods offered by Defendants are sponsored or authorized by Plaintiffs.

39.     Continued infringement by Defendants also prohibits Plaintiffs from being able to control the quality of the goods provided in connection with the HUGME Mark and diminishes the value of the HUGME Mark as a source identifier.

40.     Without a permanent injunction, consumers who purchase the Infringing Goods will receive potentially inferior goods that have not been authorized or subject to the high quality standards of Plaintiffs.

41.     Defendants' sale and distribution of the Infringing Goods in connection with the Infringing Marks is a direct violation of federal and New Jersey trademark and unfair competition laws, and Plaintiffs' rights under those laws.  Accordingly, Plaintiffs seek injunctive relief to stop Defendants' continued deception of the public and the irreparable injury to Plaintiffs arising from Defendants' advertising, promotion, distribution, offer for sale and sale of the Infringing Goods in connection with the Infringing Marks.

42.     Defendants' activities have caused and will continue to cause Plaintiffs grave and irreparable harm.  Unless restrained and enjoined by this Court, Defendants will persist in their activities and offer their Infringing Goods in connection with the Infringing Marks, causing Plaintiffs further irreparable harm.

43.     Because the acts of Defendants will continue in the future unless restrained, Plaintiffs have no adequate remedy at law.

44.     Defendants' actions constitute willful misconduct, malice, fraud, wantonness, oppression, and/or the entire want of care, which raises the presumption of conscious indifference to consequences.

## CAUSES OF ACTION

### COUNT I

### (Federal Common Law Trademark Infringement - 15 U.S.C. § 1125(a))

45.     Plaintiffs repeat and reallege the allegations set forth in each of the foregoing paragraphs as if fully set forth herein.

46.     Defendants, upon information and belief, with direct knowledge of Plaintiffs' rights in and to the HUGME Mark, are engaged in the promotion, distribution, and offer of goods under the Infringing Marks.

47.     The use by Defendants of trademarks that are confusingly similar to the HUGME Mark in connection with the promotion, distribution, and offering of competing goods is not authorized by Plaintiffs.

48.     The acts of Defendants in promoting, distributing, and offering goods under the Infringing Marks, constitute common law trademark infringement in violation of Lanham Act § 43(a), 15 U.S.C. § 1125(a).

49.     The acts of Defendants cause a likelihood of confusion, deception and mistake by the consuming public, and the trade.  The acts of Defendants create a likelihood that a false and unfair association will be made between Defendants, the Infringing Marks, and any goods offered under the Infringing Marks, and Plaintiffs, so that consumers are likely to believe and have, upon information and belief, mistakenly believed that Defendants' business and goods are associated with or sponsored and approved by Plaintiffs.

50.     Defendants' unauthorized use of the Infringing Marks falsely represents Defendants, Defendants' business, and any goods offered by Defendants as being legitimately connected with Plaintiffs, and it places beyond Plaintiffs' control their reputation for goods of the highest quality.

51.     Such acts constitute common law trademark infringement.

52.     Upon information and belief, the acts of Defendants have been committed intentionally, maliciously, fraudulently, and willfully for the purposes of deceiving and have in fact deceived the trade and consumers into doing business with Defendants and purchasing goods from Defendants based on the false belief that such goods are authentic goods offered by or under the auspices of Plaintiffs, and with the specific intent to appropriate to Defendants and to employ for their own benefit the valuable goodwill and business reputation represented by the HUGME Mark.

53.     The acts of Defendants have caused and, if allowed to continue, will continue to cause Plaintiffs to suffer substantial irreparable damage and injury.  Plaintiffs have no adequate remedy at law.

54.     Plaintiffs are entitled to a permanent injunction against Defendants, as well as all other remedies available under the Lanham Act, including an award of monetary damages.

10

## COUNT II

**(Federal Unfair Competition,**
**False Designation of Origin and False Advertising – 15 U.S.C. § 1125(a))**

55.     Plaintiffs repeat and reallege the allegations set forth in each of the foregoing paragraphs as if fully set forth herein.

56.     Defendants' creation, production, offering for sale, advertisement, and/or distribution of Defendants' Infringing Goods in connection with the Infringing Marks has been and is without Plaintiffs' permission or consent, and constitutes a designation of a term, symbol, device, or any combination thereof, that is false or misleading within the meaning of 15 U.S.C. § 1125(a).

57.     Defendants' knowing use of the Infringing Marks, which are confusingly similar to the HUGME Mark, in connection with the Infringing Goods is causing and will continue to cause confusion, deception, and mistake among the general purchasing public of the United States by creating the false and misleading impression that Defendants' Infringing Goods emanate from and/or are distributed by Plaintiffs, are affiliated, connected, or associated with Plaintiffs, or have the sponsorship, endorsement, or approval of Plaintiffs.

58.     By adopting and using the Infringing Marks, Defendants misrepresent and falsely describe to the general public the origin and source of the Infringing Goods and create a likelihood of confusion by consumers as to the source of such products.

59.     Defendants' unlawful, unauthorized, and unlicensed Infringing Goods create express and implied misrepresentations that Defendants' Infringing Goods were created, authorized, or approved by Plaintiffs, when in fact they are not, all to Defendants' profit and to Plaintiffs' great damage and injury.

60.     Defendants' acts are in violation of 15 U.S.C. § 1125(a) in that Defendants' adoption and use of the Infringing Marks in connection with the Infringing Goods in interstate commerce constitutes a false designation of origin, false advertising, and unfair competition.

61.     Defendants' acts demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the HUGME Mark to Plaintiffs' great and irreparable injury.

62.     The acts of Defendants have caused and, if allowed to continue, will continue to cause Plaintiffs to suffer substantial irreparable damage and injury.  Plaintiffs have no adequate remedy at law.

63.     Plaintiffs are entitled to a permanent injunction against Defendants, as well as all other remedies available under the Lanham Act, including an award of monetary damages.

**COUNT III**

**(Cancellation of Registration and Abandonment of '430 Application
Pursuant to 15 U.S.C.  §§ 1119 and 1052(d))**

64.     Plaintiffs repeat and reallege the allegations set forth in each of the foregoing paragraphs as if fully set forth herein.

65.     The SQUISHMALLOWS HUG MEES mark, which is the subject of the Infringing Registration, is confusingly similar to the HUGME Mark which was in use prior to Defendants' adoption, first use, and registration of the SQUISHMALLOWS HUG MEES mark, and when this mark is used in connection with Defendants' Infringing Goods, it is likely to cause confusion, or to cause mistake, or to deceive consumers to mistakenly believe that Defendants' goods are those of Plaintiffs and/or that Defendants and Defendants' goods are authorized or sponsored by Plaintiffs.

66.     The HUG MEES BY ORIGINAL SQUISHMALLOWS mark, which is the subject of the '430 Application, is confusingly similar to the HUGME Mark which was in use prior to

Defendants' adoption, first use, and application to register the HUG MEES BY ORIGINAL SQUISHMALLOWS mark, and when this mark is used in connection with Defendants' Infringing Goods, it is likely to cause confusion, or to cause mistake, or to deceive consumers to mistakenly believe that Defendants' goods are those of Plaintiffs and/or that Defendants and Defendants' goods are authorized or sponsored by Plaintiffs.

67.     Plaintiffs are being and will continue to be damaged by Defendants' continued ownership of the Infringing Registration and the '430 Application.

68.     In light of the foregoing, the Court should declare the Infringing Registration invalid and enter an order cancelling the Infringing Registration pursuant to 15 U.S.C. §§ 1119 and 1052(d), and enter an order directing Kelly Toys to abandon the '430 Application with prejudice.

## COUNT IV

### (Common Law Trademark Infringement and Unfair Competition Under N.J. Stat. Ann. § 56:4-1)

69.     Plaintiffs repeat and reallege the allegations of each of the foregoing paragraphs as if fully set forth herein.

70.     Plaintiffs own the HUGME Mark by reason of Plaintiffs' continuous use and advertisement and promotion of the HUGME Mark in the State of New Jersey.

71.     The HUGME Mark is valid and legally protectable.

72.     Defendants' use of the Infringing Marks to identify the Infringing Goods is likely to create confusion concerning the origin of the goods.

73.     Defendants' acts constitute trademark infringement and unfair competition in violation of N.J. Stat. Ann. § 56:4-1.

74.     Defendants' acts alleged herein have caused and, if allowed to continue, will continue to cause Plaintiffs to suffer substantial irreparable damage and injury.  Plaintiffs have no adequate remedy at law.

75.     As a result of the foregoing, Plaintiffs have been damaged, and Defendants have been unjustly enriched.

**COUNT V**

**(False Designation of Origin Under N.J. Stat. Ann. § 56:8-2)**

76.     Plaintiffs repeat and reallege the allegations of each of the foregoing paragraphs as if fully set forth herein.

77.     Defendants' use of the Infringing Mark in connection with the Infringing Goods has caused or is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Plaintiffs, and/or as to the source, sponsorship, or approval of Defendants or the Infringing Goods, in that purchasers and others in this judicial district and elsewhere in the United States are likely to believe that Defendants are associated with or related to Plaintiffs, and/or that Defendants and the Infringing Goods are otherwise affiliated with or sponsored by Plaintiffs.

78.     Further, Defendants' advertising and promotion of the Infringing Goods in connection with the Infringing Marks falsely designates the source of these services in a manner that is likely to cause confusion, mistake or deception among consumers as to the origin, sponsorship, or approval of the Infringing Goods.

79.     Defendants' acts constitute false designation of origin in violation of N.J. Stat. Ann. § 56:8-2.

14

80.     Defendants' acts alleged herein have caused and, if allowed to continue, will continue to cause Plaintiffs to suffer substantial irreparable damage and injury.  Plaintiffs have no adequate remedy at law.

81.     As a result of the foregoing, Plaintiffs have been damaged, and Defendants have been unjustly enriched.

**COUNT VI**

**(Trademark Infringement Under New Jersey Common Law)**

82.     Plaintiffs repeat and reallege the allegations of each of the foregoing paragraphs as if fully set forth herein.

83.     Defendants' use of the Infringing Marks in connection with the Infringing Goods has caused or is likely to cause confusion, mistake, or deception as to the source or origin, sponsorship, or approval of Defendants and/or the Infringing Goods, in that purchasers and others in this judicial district and elsewhere in the United States are likely to believe that Defendants are associated with or related to Plaintiffs, and/or that Defendants and the Infringing Goods are otherwise affiliated with or sponsored by Plaintiffs.

84.     Use of the Infringing Marks by Defendants in connection with the promotion, offering and provision of the Infringing Goods in connection with the Infringing Marks is not authorized by Plaintiffs.

85.     Defendants' acts injure Plaintiffs' goodwill and reputation with consumers in this District and elsewhere in the United States by creating confusion about, and potential consumer dissatisfaction with Plaintiffs.

86.     Defendants' acts alleged herein constitute trademark infringement of the HUGME Mark in violation of New Jersey common law.

87.     Defendants' acts alleged herein have caused and, if allowed to continue, will continue to cause Plaintiffs to suffer substantial irreparable damage and injury.  Plaintiffs have no adequate remedy at law.

88.     As a result of the foregoing, Plaintiffs have been damaged, and Defendants have been unjustly enriched.

## COUNT VII

## (Unfair Competition And False Designation of Origin Under New Jersey Common Law)

89.     Plaintiffs repeat and reallege the allegations of the foregoing paragraphs as if fully set forth herein.

90.     Defendants' use of the Infringing Marks in connection with the Infringing Goods has caused or is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Plaintiffs, and/or as to the source, sponsorship, or approval of Defendants or the Infringing Goods, in that purchasers and others in this judicial district and elsewhere in the United States are likely to believe that Defendants are associated with or related to Plaintiffs, and/or that Defendants and the Infringing Goods are otherwise affiliated with or sponsored by Plaintiffs.

91.     Further, Defendants' advertising and promotion of the Infringing Goods in connection with the Infringing Marks falsely designates the source of these services in a manner that is likely to cause confusion, mistake or deception among consumers as to the origin, sponsorship, or approval of these services.

92.     Defendants' acts alleged herein constitute unfair competition and false designation of origin in violation of New Jersey common law.

93.     Defendants' acts alleged herein have caused and, if allowed to continue, will continue to cause Plaintiffs to suffer substantial irreparable damage and injury.  Plaintiffs have no adequate remedy at law.

94.     As a result of the foregoing, Plaintiffs have been damaged, and Defendants have been unjustly enriched.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs request a permanent injunction, damages, Defendants' profits, and other appropriate relief, as follows:

A.     That all Defendants served herein and their respective officers, directors, agents, partners, employees, attorneys, representatives, successors, and assigns, and all other persons in active concert or participation with them, or any of them, be restrained and permanently enjoined:

1.     from producing, manufacturing, advertising, promoting, displaying for sale, offering for sale, selling, or distributing any goods in connection with the Infringing Marks, the HUGME Mark, or any mark or designation confusingly similar thereto;

2.     from making any statement or representation whatsoever or performing any act, which can or is likely to lead the trade or public, or individual members thereof, to believe that any product distributed or sold by Defendants is in any manner associated or connected with Plaintiffs, or is sold, licensed, sponsored, approved, or authorized by Plaintiffs;

3.     from engaging in any activity constituting infringement of the HUGME Mark or any of Plaintiffs' rights in said mark or constituting any misappropriation of the goodwill, name, or reputation of Plaintiffs;

4.     from otherwise competing unfairly with Plaintiffs;

5.   from engaging in any activity constituting misappropriation and/or conversion of Plaintiffs' property and property rights;

6.   from destroying any documents, electronic files, or business records that pertain to the dissemination, or distribution and/or sale by Defendants or under Defendants' authority, of the Infringing Goods, including any correspondence (including, but not limited to, e-mails), sales and supplier or customer journals, ledgers, invoices, purchase orders, inventory control documents, bank records, catalogues, recordings of any type whatsoever, and all other business records and documents believed to concern the advertising, sale, or offering for sale of the Infringing Goods in connection with the Infringing Marks during the pendency of this action; and

7.   from effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in paragraphs (1)-(6) above.

B.   That Defendants be required to immediately deliver to Plaintiffs for destruction and/or destroy any and all signage, advertising matter, promotional, packaging, labels, and other material in their possession or control bearing the Infringing Marks, or any other trademark and/or trade name that is confusingly similar to the HUGME Mark, used in connection with the advertising and/or offering of goods not offered by or under the authorization and control of Plaintiffs.

C.   That each of the Defendants be required to supply Plaintiffs with a complete list of persons and entities to whom each of the Defendants advertised, promoted, offered and/or sold goods under the Infringing Marks, or any trademark, trade name, or domain name that is confusingly similar to the HUGME Mark.

18

D.      That each of the Defendants be ordered to file with the Court, and to serve on counsel for Plaintiffs, within thirty (30) days of the date of entry of final judgment herein, a written statement, under oath, setting forth in detail the form and manner in which each Defendant has complied with the orders herein;

E.      That each of the Defendant be ordered to account for and pay over to Plaintiffs the profits realized by Defendants and damages caused to Plaintiffs by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of Plaintiffs' HUGME Mark be increased by a sum not exceeding three times the amount thereof as provided by law under 15 U.S.C. § 1117; N.J. Stat. Ann. § 56:4-2; N.J. Stat. Ann. § 56:8-2.11; and N.J. Stat. Ann. § 56:8-19;

F.      That Plaintiffs be awarded reasonable attorneys' fees, costs, and such other and further relief as the Court may deem equitable, including, but not limited to, any relief set forth under 15 U.S.C. §§ 1116, 1117, and 1125; and N.J. Stat. Ann. § 56:8-19;

G.      That Plaintiffs be awarded punitive damages for Defendants' willful and malicious acts of statutory and common law unfair competition;

H.      That this Court enter an order directing the United States Patent and Trademark Office to cancel U.S. Registration No. 6,654,108, and that this Court enter an order directing Kelly Toys to abandon U.S. Application Serial No. 97/362,430 with prejudice; and

I.      That Plaintiffs be granted such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all claims, counterclaims and defenses so triable.

Date: July 19, 2023                     **McCARTER & ENGLISH, LLP**

By: s/Scott S. Christie
Scott S. Christie
Michael R. Friscia
Irene M. Hurtado
Carissa Rodrigue
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
Tel.: (973) 622-4444
schristie@mccarter.com
mfriscia@mccarter.com
ihurtado@mccarter.com
crodrigue@mccarter.com

*Attorneys for Plaintiffs*
*NECA LLC and Kidrobot, LLC*

## LOCAL CIV. R. 11.2 CERTIFICATION

I certify that to the best of my present knowledge, the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

Dated:  July 19, 2023

**McCARTER & ENGLISH, LLP**

By: s/Scott S. Christie
Scott S. Christie
Michael R. Friscia
Irene M. Hurtado
Carissa Rodrigue
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
Tel.: (973) 622-4444
schristie@mccarter.com
mfriscia@mccarter.com
ihurtado@mccarter.com
crodrigue@mccarter.com

*Attorneys for Plaintiffs*
*NECA LLC and Kidrobot, LLC*