# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **NECA LLC; KIDROBOT LLC,** | : | Civil Action No. 23-3863 (SDW) (MAH) |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **OPINION** |
| | : | |
| **JAZWARES, LLC; KELLY TOY HOLDINGS, LLC,** | : | |
| | : | |
| **Defendants.** | : | |

## I.  INTRODUCTION

This matter comes before the Court by way of Plaintiffs NECA LLC's ("NECA") and Kidrobot, LLC's ("Kidrobot") (collectively, "Plaintiffs") motion for discovery sanctions due to Defendants Jazwares, LLC ("Jazwares") and Kelly Toys Holdings, LLC's ("Kelly Toys") (collectively, "Defendants") alleged spoliation of evidence.  Mot. for Disc. Sanction, Nov. 21, 2024, D.E. 61.  Defendants oppose the motion.  Defs.' Opp'n, Dec. 15, 2024, D.E. 68.  Plaintiffs filed a reply in further support of their motion.  Reply Br., Dec. 20, 2024, D.E. 70.  Defendants filed a sur-reply in further support of their opposition.  Sur-Reply, Jan. 16, 2025, D.E. 79.  The Court has reviewed the parties' submissions and, pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1, decides the motion without oral argument.  For the reasons set forth below, the Court will deny Plaintiffs' motion.

## II.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

NECA creates and distributes licensed consumer products based on movies, video games, and comic books.  Compl., D.E. 1, ¶ 10.  Kidrobot creates, and deals in, limited edition toys and clothes, among other things.  *Id.* ¶ 11.  On March 29, 2023, Kidrobot filed a trademark

application with the United States Patent and Trademark Office ("USPTO") for HUGME, a line of vibrating, plush toys. *Id.* ¶ 12; Registration 97863014, Ex. B to Compl., D.E. 1-2. Plaintiffs maintain that they have used the HUGME mark for plush toys continuously in the United States since at least 2017. Compl., D.E. 1, ¶ 13.

Jazwares and Kelly Toys own U.S. Trademark Registration No. 6654108 ("108 Registration") for SQUISHMALLOWS HUG MEES and U.S. Application Serial No. 97362430 ("430 Application") for HUG MEES by ORIGINAL SQUISHMALLOWS.[1] Ex. D to Compl., 108 Registration, D.E. 1-4; Ex. C to Compl., 430 Application, D.E. 1-3. On June 13, 2019, non-party, Kellytoy Worldwide Inc. ("Worldwide"), filed an application for the SQUISHMALLOWS HUG MEES mark ("the Mark"). Ex. D to Compl., 108 Registration, D.E. 1-4. The Mark was first used in commerce on June 28, 2019. *Id.* On March 9, 2020, non-party Worldwide and Defendant Kelly Toys entered into a Securities Purchase Agreement ("Purchase Agreement"). Defs.' Opp'n, D.E. 68, at 4. As part of that Purchase Agreement, on March 31, 2020, Worldwide and Kelly Toys entered into a Trademark Assignment Agreement ("Assignment Agreement"). *Id.*; Decl. of Sourabh Mishra ("Mishra Decl."), D.E. 68-1, ¶ 15 & Ex. 1, Trademark Assignment Agreement, D.E. 68-2. In accordance with the Assignment Agreement, Worldwide assigned the Mark, along with thirty other trademarks, to Kelly Toys.[2] *Id.*

---

[1] The exact relationship between Kelly Toys and Jazwares is unclear. However, based on the parties' own representations, they are "related companies." Tr. of Apr. 19, 2025 Conf., D.E. 37, 22:11. Thus, for purposes of this Opinion, the Court will consider both Jazwares and Kelly Toys as the owners of the 108 Registration and 430 Application.

[2] The Assignment Agreement also states that "in connection with the Purchase Agreement, Transferors and Transferees have entered into a Contribution Agreement . . . , whereby Transferors contributed substantially all of Transferors' assets to Transferees in accordance with the terms and conditions of the Contribution Agreement." Mishra Decl., D.E. 68-1, ¶ 15 & Ex. 1, Trademark Assignment Agreement, D.E. 68-2. The Purchase Agreement, Contribution Agreement, and the IP Schedule referenced in those agreements are the documents that are the

On July 19, 2023, Plaintiffs filed a Complaint against Defendants claiming that Defendants have infringed Plaintiffs' common-law trademark rights to the HUGME mark.[3] Compl., D.E. 1.  Plaintiffs assert that Defendants infringe the HUGME mark through the use of, among others, SQUISHMALLOWS HUG MEES and HUG MEES by ORIGINAL SQUISHMALLOWS.[4]  *Id.* ¶ 29.  In particular, Plaintiffs allege that the 108 Registration for SQUISHMALLOWS HUG MEES and 430 Application for HUG MEES by ORIGINAL SQUISHMALLOWS ("Infringing Marks") infringe Plaintiffs' HUGME mark.  *Id.* ¶ 30. Plaintiffs bring claims against Defendants for:  (1) federal common law trademark infringement; (2) federal unfair competition, false designation of origin and false advertising; (3) cancellation of registration and abandonment; (4) common law trademark infringement and unfair competition; (5) false designation of origin under New Jersey law; (6) trademark infringement under New Jersey common law; and (7) unfair competition and false designation of origin under

---

subject of this spoliation motion.  For ease of reference, the Court will term these documents the "Asset Purchase Documents."

In May 2020, Worldwide notified the USPTO that the Mark had been assigned to Kelly Toys, the current owner.  Ex. D to Compl., 108 Registration, D.E. 1-4; Mishra Decl., D.E. 68-1, ¶ 18 & Ex. 4, Change Address or Representation Form, D.E. 68-5, at 3.  On December 28, 2021, Kelly Toys recorded with the USPTO the Trademark Assignment Agreement that demonstrated Worldwide transferred the Mark to Kelly Toys.  Decl. of Scott Christie ("Christie Decl."), D.E. 61-2, ¶ 12 & Ex. A, USPTO Notice of Recordation of Assignment Document, D.E. 61-3, at 17. On February 22, 2022, the USPTO issued a Registration Certificate to Kelly Toys for the Mark. Mishra Decl., D.E. 68-1, ¶ 16 & Ex. 2, Registration Certificate, D.E. 68-3.

[3]  Kidrobot did not file a Trademark application for HUGME until March 29, 2023.  Ex. B to Compl., HUGME Application, D.E. 1-2.  The U.S. Application Serial No. for the HUGME Mark is 97/863,014.  *Id.*

[4]  Kelly Toys filed the 430 Application for HUG MEES by ORIGINAL SQUISHMALLOWS on April 13, 2022, well after the date on which Worldwide transferred marks to Kelly Toys.  *See* Ex. C to Compl., 430 Application, D.E. 1-3.  Accordingly, the 430 Application and HUG MEES by ORIGINAL SQUISHMALLOWS are not the subject of this motion.

New Jersey common law.[5]  *Id.* at 9-17.   Plaintiffs seek, *inter alia*, a permanent injunction barring Defendants from using the Infringing Marks, damages, cancellation of Defendants' 108 Registration, and a requirement that Defendants abandon their 430 Application.  *Id.* at 17-19.

On October 31, 2023, the Court held a Pretrial Scheduling Conference with the parties and, at the conclusion, entered a Pretrial Scheduling Order.  Pretrial Scheduling Order, D.E. 22. The Court set the close of fact discovery for June 28, 2024, the deadline to raise written discovery disputes for April 15, 2024, and the deadline to file motions to amend pleadings as February 5, 2024.  *Id.*, ¶¶ 2, 5, 12.  The Court thereafter entered five Amended Scheduling Orders, finally extending the close of fact discovery to January 24, 2025.  *See* Amended Scheduling Orders, D.E.s 36, 41, 47, 60, 77.

## III.  SPOLIATION MOTION AND RELATED DISCOVERY DISPUTE

On November 1, 2024, Plaintiffs filed a letter seeking leave to file an amended complaint or, in the alternative, obtain an adverse inference against Defendants precluding them from arguing they are not liable for damages before April 1, 2020, the date on which Kelly Toys became owner of the Mark.  Pls.' Ltr., D.E. 51.  Plaintiffs contended that Defendants had only recently claimed that non-party Worldwide was liable for all sales under Defendants' SQUISHMALLOWS HUG MEES trademark pre-dating April 1, 2020.  *Id.*  Accordingly, Plaintiffs argued that it was appropriate to permit them either to amend the Complaint to add Worldwide as a Defendant, or grant them an adverse inference against Defendants for failure to

---

[5]  Plaintiffs attached to their Complaint copies of both Defendants' 430 Application and the 108 Registration.  *See* Ex. C to Compl., 430 Application, D.E. 1-3; Ex. D to Compl., 108 Registration, D.E. 1-4.  Plaintiffs attached to their Complaint the 108 Registration, which contains the prosecution history for the Mark and shows that Worldwide assigned the Mark to Kelly Toys on March 31, 2020.  *See* Ex. D to Compl., 108 Registration, D.E. 1-4.

disclose, earlier in the litigation, that their liability for infringement would be limited to any acts occurring on April 1, 2020 or later.  *Id.*

Defendants filed a letter challenging Plaintiffs' request on November 11, 2024.  Defs.' Ltr., D.E. 55.  They argued that fact discovery was about to close and the February 5, 2024 deadline to amend had long since passed.  *Id.* at 1.  Defendants maintained that any motion to amend should be denied because Plaintiffs had not been diligent in investigating Worldwide's role in any infringement and should have been aware of their existence at least four months before they filed their Complaint.  *Id.* at 2-6.  Defendants also maintained they would suffer prejudice from such a late amendment and no party would be prejudiced by denial of the amendment.  *Id.* at 6-7.  With respect to the adverse inference, Defendants contended that no spoliation occurred and they had been working diligently with Plaintiffs to provide them information related to pre-acquisition sales liability.  *Id.* at 7-9.

On November 12, 2024, the Court entered an Order that allowed Plaintiffs to move to amend their Complaint and established a briefing schedule.  Order, D.E. 57.  Rather than move to amend, on November 21, 2024, Plaintiffs filed the instant motion for sanctions.[6]  Mot. for Disc. Sanction, D.E. 61.  Plaintiffs seek to preclude Defendants from arguing that they are not liable for trademark infringement damages prior to April 1, 2020.  *Id.* at 13-14.  Plaintiffs also

---

[6]  Plaintiffs explained that "[w]hile Plaintiffs would be justified in seeking to amend the complaint to add [Worldwide] as a defendant in this case, they appreciate that since the fact discovery deadline is looming, the Court may not be receptive to such an amendment which likely would result in the restarting of discovery from scratch as to [Worldwide]."  Pls.' Br., D.E. 61-1, at 1.  Plaintiffs represented that they did not wish to shoulder the burden of any additional cost for discovery as to a new party.  *Id.*  The Court notes, however, that Plaintiffs had attached the prosecution history of the Mark to their Complaint, and that prosecution history identified Worldwide.  That would have posed particular challenges to Plaintiffs, given that the expired deadline to amend would have required them to satisfy the good-cause standard of Federal Rule of Civil Procedure 16.

seek an Order prohibiting Defendants from introducing or relying upon any evidence relating to the assignment of the SQUISHMALLOWS HUG MEES mark from Worldwide to Kelly Toys for any purpose. *Id.*

Plaintiffs contend that Defendants should be sanctioned because Defendants did not provide them with the Assignment Agreement between Kelly Toys and Worldwide until May 14, 2024, and that Assignment Agreement references other documents, *i.e.*, the Asset Purchase Documents, which Defendants never produced. Pls.' Br., D.E. 61-1, at 2; Christie Decl., D.E. 61-2, ¶ 3. Plaintiffs maintain that when they filed the instant motion, Defendants had not produced any of the Asset Purchase Documents.[7] Christie Decl., D.E. 61-2, ¶¶ 4-6. Plaintiffs argue that these documents are relevant because Defendants contend that they are not liable for any infringing acts before the date of the assignment of the Mark from Worldwide to Kelly Toys on March 31, 2020. Pls.' Br., D.E. 61-1, at 3. According to Plaintiffs, despite that contention, Defendants have provided no discovery to support a limitation of their liability for infringing acts. *Id.* at 5-11. Thus, Plaintiffs aver that Defendants' failure to produce the Asset Purchase Documents before May 14, 2024, amounts to spoliation. *Id.*

Defendants argue they did not spoliate evidence. Defs.' Opp'n, D.E. 68. First, Defendants maintain that which entity is responsible for pre-acquisition sales of products containing the Mark is not relevant to any of the claims or defenses in this action because

---

[7] Plaintiffs also maintain throughout their motion that Defendants failed to produce "related information" to the Asset Purchase Documents. However, Plaintiffs fail to define this related information. The Court will assume that the related information is the same information they sought in the related discovery dispute addressed below, *i.e.*, drafts of the Asset Purchase Documents, drafts of the associated intellectual property due diligence schedules, and comments or notes contained within the drafts of the IP Schedules. But the Court has already determined that this "related information" is not relevant to this action. *See* Order, Order, Jan. 17, 2025, D.E. 80. Therefore, as discussed below, the Court considers the purported spoliated evidence to be the Asset Purchase Documents.

Plaintiffs have repeatedly indicated that they are seeking only damages in the form of Defendants' profits, and not profits of sales made by someone else. *Id.* at 3, 8-9. Second, Plaintiffs cannot demonstrate that Defendants acted in bad faith or intentionally withheld any documents that support Defendants' contention that they are not liable for pre-acquisition sales. *Id.* at 3, 10-14. Third, Defendants aver that Plaintiffs cannot show that Defendants failed to produce any information Plaintiffs requested. *Id.* at 3, 14-16. Specifically, Defendants contend that they have preserved all requested information, and Plaintiffs did not request documents related to the acquisition until October 2024. *Id.* at 14. Subsequently, Defendants agreed to produce the Asset Purchase Documents with redactions and the parties simply disagreed about the extent of the redactions. *Id.* Defendants posit that the Court cannot find spoliation when the disagreement between the parties amounts to little more than a discovery dispute. *Id.* at 14-15. Finally, Defendants assert that if the Court finds spoliation, an adverse inference is inappropriate. *Id.* at 16-18.

In reply, Plaintiffs contend that the pre-assignment documents are relevant because they define the scope of Defendants' liability. Reply, D.E. 70, at 3-6. Plaintiffs argue that Defendants concede that they are intentionally withholding relevant documents. *Id.* at 6-11. Plaintiffs maintain that they have met their burden of demonstrating that Defendants have spoliated evidence by withholding the pre-assignment liability documents and that an adverse inference and exclusion of evidence are appropriate remedies for Defendants' conduct. *Id.* at 11-15.

Defendants sought, and were granted, permission to file a sur-reply to address two of Plaintiffs' arguments/allegedly misleading statements raised for the first time in reply. Defs.' Ltr., Dec. 27, 2024, D.E. 72; Order, Jan. 2, 2025, D.E. 73. In their sur-reply, Defendants contend

that the Lanham Act does not permit a party to seek damages for sales its did not make.[8]  Sur-Reply, D.E. 79, at 1.  Thus, Kelly Toys is responsible only for post-acquisition sales, while Worldwide is responsible for pre-acquisition sales.  *Id.*  Defendants also challenge Plaintiffs' contention that by submitting a declaration from Jazwares employee, Nelson Rodriguez, Defendants admit to the relevance of pre-acquisition sales.  *Id.* at 1-2.  Defendants maintain Plaintiffs misconstrue the declaration's purpose, which was to satisfy Plaintiffs' demand that Defendants submit a sworn declaration that they are not liable for pre-acquisition sales because Defendants did not make those sales.  *Id.* at 2.

After Plaintiffs filed this motion, on January 10, 2025, the parties filed a joint discovery dispute letter in which Plaintiffs sought an Order compelling Defendants to produce copies of the Asset Purchase Documents, as well as drafts of associated intellectual property due diligence schedules.  Joint Disc. Dispute Ltr., D.E. 75, at 1-6.  Plaintiffs posited that their request was "inextricable [sic] intertwined with Plaintiffs' pending motion for a finding of spoliation and a corresponding adverse inference."  *Id.* at 5.  Defendants opposed Plaintiffs' request, arguing that while they had produced redacted versions of the Asset Purchase Documents in the spirit of compromise, they lacked relevance and Plaintiffs were on a fishing expedition.  *Id.* at 6-8.  The Asset Purchase Documents are not relevant because Plaintiffs only sought damages in the form

---

[8]  On January 20, 2025, despite an admonition from the Undersigned that there would be no further briefing on this motion, Plaintiffs filed what amounts to a "sur-sur-reply," to correct misrepresentations in Defendants' sur-reply.  Sur-Sur-Reply, D.E. 81.  On February 28, 2025, Defendants filed a letter, attaching supplemental authority it believes to be relevant to the issue currently before the Court.  Defs.' Ltr., D.E. 83.  The Court has considered all filings by the parties as necessary and affords them the appropriate weight in determining whether to grant Plaintiffs' motion for sanctions.

of Defendants' profits.  *Id.*  Thus, sales made by a non-party prior to Defendants' acquisition were not relevant.  *Id.*

The Court held a conference with the parties on January 16, 2025, to address, *inter alia*, the discovery dispute.  At the conference, the Court heard argument of the parties, partially granted Plaintiffs' request, and partially denied it.  The Court directed Defendants to produce to Plaintiffs "copies of the final, executed version of the Securities Purchase Agreement, the Contribution Agreement, and IP Schedule referenced in those agreements."  Order, D.E. 80.  The Court concluded that although the final versions of the Asset Purchase Documents and IP schedule meet the standard for relevance under Rule 26(b)(1), they are not critical documents. Tr. of Jan. 16, 2025 Conf., D.E. 82, 28:4-31:20.  The Court reasoned that although those documents are "probative of what liabilities accompanied the asset transfer" and "necessary context for the full scope of the assignment of rights and liabilities that accompanied the asset transfer," "the focus of this case is on the [D]efendants' sales of and profits from the plush toys following the March 2020 asset purchase."  *Id.*, 29:2-30:19.  The Court did not require Defendants to produce "drafts of the Asset Purchase Documents, drafts of the associated intellectual property due diligence schedules, and comments or notes contained within the drafts of the IP schedules."  Order, D.E. 80.  The Court concluded that Plaintiffs had failed to demonstrate that the drafts, comments, and notes were relevant.  Tr. of Jan. 16, 2025 Conf., D.E. 82, 32:25-34:11.

## IV. LEGAL STANDARD AND ANALYSIS

Plaintiffs seek an adverse inference against Defendants for alleged spoliation of the Asset Purchase Documents in the form of an order prohibiting Defendants from: (1) arguing at trial that they are not liable for trademark infringement damages before pre-acquisition of the Mark

on March 31, 2020; and (2) offering evidence regarding the assignment of the Mark from Worldwide to Kelly Toys.  Pls.' Br., D.E. 61-1, 1-2, 13-14.  As the movant, Plaintiff relies on the traditional test for the spoliation and wrongful withholding of physical evidence, and does not rely on the standards for the spoliation and wrongful withholding of electronically stored information ("ESI") under Federal Rule of Civil Procedure 37.  Defendants follow Plaintiffs' lead.  For the sake of completeness, the Court analyzes Plaintiffs' application under both standards.

### A. Spoliation of Physical Documents

For physical evidence, spoliation is the alteration, destruction, or failure to produce evidence relevant to an issue in a case.  *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012); *Castellani v. City of Atlantic City*, No. 13-5848, 2016 WL 7155826, at *3 (D.N.J. Sept. 15, 2016).  To determine whether a party engaged in spoliation, courts consider four factors: (1) whether the spoliated evidence was in the accused party's possession or control; (2) the relevance of the evidence to the litigation; (3) whether the accused party actually suppressed or destroyed the evidence; and (4) whether the accused party had a duty to preserve the evidence. *Bull*, 665 F.3d at 73; *Kuhar v. Petzl Co.*, No. 16-0395, 2018 WL 6363747, at *5 (D.N.J. Nov. 16, 2018).  The party seeking spoliation sanctions bears the burden of proving each factor.  *See Kuhar*, 2018 WL 6363747, at *5; *Frazier v. Bed Bath & Beyond, Inc.*, No. 10-5398, 2013 WL

1845499, at *7 (D.N.J. Apr. 30, 2013).  Because "this is not a balancing test," the movant must

satisfy every factor of the spoliation analysis.  *Kuhar*, 2018 WL 6363747, at *5.

If the Court finds that a party engaged in spoliation, it must then determine what

sanctions, if any, are warranted.  *See Bull*, 665 F.3d at 73 n.5.  In determining whether and what

sanctions are appropriate, the Court must consider:

> (1) the degree of fault of the party who altered or destroyed the
> evidence; (2) the degree of prejudice suffered by the opposing
> party; and (3) whether there is a lesser sanction that will avoid
> substantial unfairness to the opposing party, and, where the
> offending party is seriously at fault, will serve to deter such
> conduct by others in the future.

*Id.* (quoting *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994)).  The range of

potential spoliation sanctions includes dismissal of the action, exclusion of evidence, an

instruction to the finder of fact allowing for an adverse inference, and attorneys' fees and costs.

*Mosaid Techs. Inc. v. Samsung Elecs. Co., Ltd.*, 348 F. Supp. 2d 332, 335 (D.N.J. 2004).

The Court must first consider whether spoliation occurred, and if so, whether the adverse

inference Plaintiffs seek is appropriate.  For the reasons stated below, the Court finds that

Plaintiffs fail to meet their burden of demonstrating that Defendants spoliated or withheld

evidence.

### 1.    Control

The first factor requires that the moving party prove the purported spoliated evidence was

in the spoliating party's "possession, custody, or control."  *Eisenband v. Pine Belt Auto., Inc.*,

No. 17-8549, 2020 WL 1486045, at *8 (D.N.J. Mar. 27, 2020) (quoting *Camden Iron & Metal,

Inc. v. Marubeni Am. Corp.*, 138 F.R.D. 438, 442 (3d Cir. 1991)).  It is not necessary for a party

to have physical control of the evidence in question.  *Id.* (quoting *Swindell Dressler Int'l Co. v.

Travelers Cas. & Sur. Co.*, 827 F. Supp. 498, 505 (W.D. Pa. 2011)).  Instead, it is enough that

the alleged spoliating party had "the legal right or ability to obtain the documents from another source upon demand." *Mercy Catholic Med. Ctr. v. Thompson*, 380 F.3d 142, 160 (3d Cir. 2004).

The parties do not dispute that the Asset Purchase Documents are within Defendants' control. *See* Pls.' Br., D.E. 61-1, at 9 ("It is undisputed that information and documents [related to the transfer of the Mark on March 31, 2020] all are within Defendants' control. Defendants are the unique source for this information and these documents."); Defs.' Opp'n, D.E. 68, at 8 (disputing only three of the necessary factors for a finding of spoliation: relevance, duty to disclose, and actual suppression or withholding).

### 2.    Relevance

Evidence is considered relevant if it would tend to support, or help defend against, a claim. *See Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 430 (S.D.N.Y. 2004) ("A party seeking [sanctions] based on the spoliation of evidence must establish . . . that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense."); *see also Frazier*, 2013 WL 1845499, at *7 (analyzing whether the evidence contains information relevant to the allegations in the complaint). Whether evidence is relevant is generally considered under the discovery standard set forth in Rule 26. *See Fairview Ritz Corp. v. Borough of Fairview*, No. 09-0875, 2013 WL 163286, at *4 (D.N.J. Jan. 15, 2013).

Plaintiffs contend that the Asset Purchase Documents are relevant to the amount of damages for which Defendants are liable for their infringement of Plaintiffs' mark. Pls.' Br., D.E. 61-1, at 9-10. Specifically, Plaintiffs maintain that the documents are important to Defendants' defense that Worldwide, and not Kelly Toys, is responsible for acts of infringement,

and related damages, from the period of June 28, 2019 through March 31, 2020. *Id.* On the

other hand, Defendants argue that the Asset Purchase Documents are not relevant to any claim or

defense before this Court because Plaintiffs repeatedly only sought relief in this litigation in the

form of "Defendants' profits" and not profits by non-parties. Defs.' Opp'n, D.E. 68, at 9.

The Court has already concluded that Asset Purchase Documents are relevant to this

litigation. During the January 16, 2025 hearing to resolve the parties' discovery dispute, the

Court found:

> [T]he final executed versions of the [Asset Purchase] documents
> meet the definition of relevance under Rule 26(b)(1) because they're
> probative of what liabilities accompanied the asset transfer. If, for
> example, liability for infringement arising from preacquisition sales
> passed from Kelly Worldwide Inc. to the [D]efendants as part of that
> asset purchase, that might bear on the scope of damages that are
> recoverable. If, on the other hand, the defendants never assumed
> liability for preacquisition sales, that too might bear on the scope of
> damages.
>
> But more than that, the final documents as a whole provide
> necessary context for the full scope of the assignment of rights and
> liabilities that accompanied the asset transfer.

Tr. of Jan. 16, 2025 Conf., D.E. 82, 29:2-15. Therefore, the Court concluded that the Asset

Purchase Documents satisfied the relevance standard of Rule 26(b)(1). But the Court also

determined that the Asset Purchase Documents were not "critical discovery in this case because

the focus of this case is on the defendants' sales of and profits from the plush toys following the

March 2020 asset purchase" and that "the value of the documents is limited to providing context

to the trademark assignment agreement." *Id.*, 30:14-19. Accordingly, Plaintiffs have met their

burden of demonstrating that the Asset Purchase Documents are relevant to this litigation, even if

by a narrow margin.[9]  The Court must now consider whether Defendants had a duty to preserve the Asset Purchase Documents.

### 3.    Duty to Preserve

The question here is whether Defendants had a duty to preserve the purportedly spoliated evidence, and if so, when that duty arose.  *Bull*, 665 F.3d at 77-78.  A litigant is "under a duty to preserve what it knows, or reasonably should know, will likely be requested in reasonably foreseeable litigation."  *Scott v. IBM Corp.*, 196 F.R.D. 233, 249 (D.N.J. 2000).  Whether litigation is reasonably foreseeable is a "flexible fact-specific standard that allows a district court to exercise the discretion necessary to confront the myriad factual situations inherent in the spoliation inquiry."  *Bull*, 665 F.3d at 77 (quoting *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011)).  Additionally, the inquiry into whether litigation was reasonably foreseeable is a question of law to be determined by the Court.  *Van De Wiele v. Acme Supermarkets*, No. 13-5924, 2015 WL 4508376, at *3 (D.N.J. July 24, 2015).  Courts consider the following factors to determine whether the duty to preserve arose: "(1) pending or probable litigation involving the defendants; (2) knowledge by the plaintiff of the existence or likelihood of litigation; (3) foreseeability of harm to the defendants, . . . ; and (4) evidence relevant to the litigation."  *Id.* (quoting *Aetna Life & Cas. Co. v. Imet Mason Contractors*, 309 N.J. Super. 358,

---

[9] Conversely, the Court found that any drafts of the Asset Purchase Documents and IP Schedule, and any comments or notes contained in those drafts are not relevant to the claims and defenses before the Court.  *See* Order, D.E. 80 (determining that "Defendants [were] not required to produce to Plaintiffs drafts of the Asset Purchase Documents, drafts of the associated intellectual property due diligence schedules, and comments or notes contained within the drafts of the IP schedules."); *see also* Tr. of Jan. 16, 2025 Conf., D.E. 82, 32:25-34:11 (finding that Plaintiffs had failed to demonstrate that the drafts, comments, and notes were relevant to the claims and defenses in this matter).  Thus, the Court concludes that Plaintiffs have not met their burden of demonstrating relevance as to any documents other than the final, executed copies of the Asset Purchase Documents.

366 (N.J. App. Div. 1998)); *Kounelis v. Sherrer*, 529 F. Supp. 2d 503, 518 (D.N.J. 2008). Absent a duty to preserve, there can be no spoliation. *Van De Wiele*, 2015 WL 4508376, at *3 (collecting cases).

Plaintiffs contend that Defendants had a duty to preserve the Asset Purchase Documents. Defendants do not dispute that they preserved all relevant documents. *See* Defs.' Opp'n, D.E. 68, at 14 ("There is no dispute that Defendants have preserved all requested documents and information."). That might end the inquiry on this factor. However, at least one court in the Third Circuit has treated this factor as the equivalent of a duty to produce. *See Abdelgawad v. Mangieri*, No. 14-1641, 2017 WL 6557483, at *4 (W.D. Pa. Dec. 22, 2017). In *Abdelgawad*, the court, in conducting its spoliation analysis, concluded, "[s]pecifically, these bank statements were within Mangieri's control, would be relevant to detecting the existence of misrepresentations underlying the 2012 Valuation and the K-1 tax basis for 2013, they were not produced, and Mangieri was on notice of his duty to produce them via Plaintiff's production request." *Id.*; *see also Domus BMW Funding, LLC v. Arch Ins. Co.*, No. 23-94, 2024 WL 3761737, at *6 (E.D. Pa. Aug. 12, 2024) (opining on a spoliation motion that "[a] party has a duty to provide fulsome discovery. That means taking reasonable measures to acquire and turn over relevant information."). Plaintiffs also assert that Defendants were aware that the Asset Purchase Documents "would need to be preserved and produced." Pls.' Br., D.E. 61-1, at 11.

In sum, Defendants do not dispute that they had a duty to preserve the Asset Purchase Documents. *See* Defs.' Opp'n, D.E. 68, at 14. And there is no dispute that Defendants preserved them. Therefore, the next question is whether Defendants had a duty to produce those documents. The Court concludes that Defendants were not on notice of their duty to produce the Asset Purchase Documents until this Court ruled on the parties' discovery dispute surrounding

the Asset Purchase Documents on January 16, 2025, two months after Plaintiffs filed this motion.

Plaintiffs argue that because the Asset Purchase Documents are material to analysis of Defendants' damages liability, it was "reasonably foreseeable" that they would need to be produced in discovery. Pls.' Br., D.E. 61-1, at 11. Plaintiffs reason that because Defendants knew that Worldwide assigned Kelly Toys the Mark on March 31, 2020, but that the Mark had been in use since June 28, 2019, they should have produced the Asset Purchase Documents related to the assignment. *Id.* This argument is unpersuasive for several reasons.

First, Plaintiffs' own actions in this litigation led Defendants to reasonably believe that they did not have a duty to produce the Asset Purchase Documents. Plaintiffs have known since at least July 19, 2023, when they filed their Complaint, that Worldwide previously owned the Mark and transferred its ownership to Kelly Toys on March 31, 2020. Plaintiffs attached a copy of the prosecution history for the Mark to their Complaint. *See* Ex. D to Compl., 108 Registration, D.E. 1-4. The prosecution history very clearly shows that Worldwide, the previous owner of the Mark, assigned the Mark to Defendant Kelly Toys on March 31, 2020. *Id.* at 5. For whatever reason, Plaintiffs decided not to include Worldwide as a defendant. And Plaintiffs apparently did not pursue any further action regarding that assignment until fact discovery was about to close. On October 18, 2024, two weeks before the close of the then-fact discovery deadline, did Plaintiffs subpoena Worldwide's owner and request the Asset Purchase Documents. *See* Mishra Decl., D.E. 68-1, ¶¶ 9-11.

Plaintiffs argue that it was not until either September or October 2024,[10] that Defendants contended that they were not liable for any infringement before April 1, 2020. Christie Decl.,

---

[10] Plaintiffs offer varying dates for when they learned of Defendants' position that damages are

D.E. 61-2, ¶¶ 6-7.  Plaintiffs argue that this is a critical issue that Defendants should have disclosed much earlier in this litigation, and that none of Defendants' discovery responses support Defendants' position that their liability is limited.  *Id.* ¶ 6.  But Defendants' position is a legal argument, not a discoverable fact or evidence.  Defendants had no obligation to preview their legal theory for Plaintiffs' benefit.  Additionally, Defendants had no reason to believe that Plaintiffs were seeking discovery from Defendants related to pre-acquisition sales before Plaintiffs raised the issue in Fall 2024.  Instead, throughout this litigation, Plaintiffs have consistently maintained that they are seeking damages in the form of Defendants' profits.  In their Complaint, Plaintiffs request "[t]hat each of the Defendant[s] be ordered to account for and pay over to Plaintiffs the profits realized by Defendants and damages caused to Plaintiffs by reason of Defendants' unlawful acts herein alleged."  Compl., D.E. 1, at p. 19, ¶ E.  Similarly, Plaintiffs' Rule 26 disclosures, served on Defendants on October 23, 2023, reflect that they are seeking damages from Defendants in the form of Defendants' profits.  Ex. 11 to Mishra Decl., Pls.' Rule 26 Disclosures, D.E. 68-12, at 6.  In particular, Plaintiffs seek:

> C. Computation of Categories of Damages Claimed by Plaintiffs. Plaintiffs seek, in addition to permanent injunctive relief, recovery of trebled compensatory damages, punitive damages, and attorneys' fees and costs, together with an accounting of Defendants' profits flowing from its willful and intentional infringement, as well as pre- and post-judgment interest. Information concerning profits of Defendants attributable to Defendants' wrongful conduct is, upon information and belief, in the possession, custody, or control of Defendants or third parties. Thus, Plaintiffs are not in a position to calculate profits until after discovery has been conducted in this action. Moreover, information concerning actual damages to

---

limited to only those acts of infringement occurring after March 31, 2020, the date on which Defendants acquired the Mark.  For example, Plaintiffs' assert that "it was only in September 2024 that Defendant first hinted" at their limitation of liability due to the transfer of the Mark on March 31, 2020.  But they also argue that they learned "[f]or the first time" on October 22, 2024, during a meet and confer regarding discovery disputes, that Defendants insisted that their liability was limited, if at all, to post-March 31, 2020 acts of infringement.  Christie Decl., D.E. 61-2, ¶¶ 6-7.

> Plaintiffs arising from Defendants' wrongful conduct is also in the possession, custody or control of Defendants or third parties. Therefore, Plaintiffs are not in a position to calculate these or any of the other types of claimed damages prior to conducting discovery in this action.

*Id.* ¶ C. Perhaps most tellingly, on October 29, 2024, Plaintiffs served their supplemental responses to Defendants' Interrogatory 11, which asked Plaintiffs to identify damages. Plaintiffs responded that they "elect recovery of damages, pursuant to 15 U.S.C. § 1117(a), in the form of Defendants' wrongful profits." Ex. 12 to Mishra Decl., Plaintiffs' Supplemental Interrogatory Responses, D.E. 68-13, at 16. Not once, in the Complaint, their Rule 26 disclosures, or their responses to discovery requests, did Plaintiffs indicate that they were seeking damages in any form other than Defendants' profits. Nor did Plaintiffs seek to amend their Complaint to add Worldwide as a Defendant, subpoena Worldwide, or serve discovery requests related to preacquisition sales by Worldwide.

Plaintiffs had ample opportunity to request information from Defendants regarding Worldwide's ownership, use, and subsequent transfer of the Mark. From the outset of this litigation, Defendants clearly indicated that Worldwide, a distinct entity, first offered products bearing the Mark in or around November 1, 2018. Ex. 6, Defs' First Interrogatory Responses, D.E. 68-7, at 2. On December 20, 2023, Defendants responded to Plaintiffs' interrogatories and identified Worldwide as the first entity that offered the Mark for sale. *See* Mishra Decl., D.E. 68-1, ¶ 20 & Ex. 6, Defs' First Interrogatory Responses, D.E. 68-7, at 6. Defendants made six productions of documents in response to Plaintiffs' requests between April 7, 2024 and May 14, 2024. *See* Mishra Decl., D.E. 68-1, ¶¶ 2-7. In each of those productions, Defendants included documents referencing Worldwide. *Id.* On April 16, 2024, Defendants provided to Plaintiffs amended responses to Plaintiffs' interrogatories that identified Worldwide. *See* Mishra Decl.,

D.E. 68-1, ¶ 21 & Ex. 7, Defs' Supplemental Interrogatory Responses, D.E. 68-8, at 5-6.  On

May 14, 2024, Defendants produced the Trademark Assignment Agreement between Worldwide

and Kelly Toys to Plaintiffs.  *See* Mishra Decl., D.E. 68-1, ¶ 7.  On August 28, 2024, during the

deposition of Sunny Cho, a Kelly Toys employee, Defense Counsel alerted Plaintiffs that

Worldwide and Kelly Toys are distinct entities.  *See* Mishra Decl., D.E. 68-1, ¶ 22 & Ex. 8, Tr.

of Dep. of Sunny Cho, D.E. 68-9, 27:7-10.  On September 11, 2024, during the deposition of

Nelson Rodriguez, Vice President of Finance for Jazwares, Defense Counsel reminded Plaintiffs'

counsel that Kelly Toys and Worldwide are distinct entities.  *See* Mishra Decl., D.E. 68-1, ¶ 23

& Ex. 9, Tr. of Dep. of Nelson Rodriguez, D.E. 68-10, 156:18-157:3.

    Plaintiffs ask this Court to find that Defendants spoliated evidence by failing to produce

the Asset Purchase Documents despite Plaintiffs' own lack of diligence in pursuing an

investigation into pre-sales liability.  The Court cannot reconcile Plaintiffs' position with the

record.  Defendants named Worldwide repeatedly as the previous owner of the Mark, prior to the

acquisition in 2020.  Even assuming, solely for the sake of argument, that Defendants had a duty

to preview their legal arguments concerning damages for Plaintiffs, Plaintiffs have failed to

identify a single instance when they requested that Defendants identify their position regarding

liability for pre-acquisition damages.  And Plaintiffs failed to serve any discovery requests

relating to Worldwide, despite being aware of the Acquisition Agreement from the USPTO

records at least as early as July 19, 2023, and receiving that Acquisition Agreement from

Defendants on May 14, 2024.

    Plaintiffs did not follow up even when the issue of pre-acquisition sales liability was

raised at Mr. Rodriguez's  deposition.  There, Defense Counsel proactively communicated that

the "predecessor company is a different legal entity not owned by [Defendants]" and

"[D]efendants in this case, their affiliated companies, they didn't make those sales prior to the acquisition."  *See* Ex. 9, Tr. of Dep. of Nelson Rodriguez, D.E. 68-10, 156:18-157:3.  Instead, Plaintiffs waited until October 18, 2024, two weeks before the then-scheduled close of fact discovery, to subpoena Worldwide's owner.  *See* Mishra Decl., D.E. 68-1, ¶ 9.  Nor did Plaintiffs indicate their desire to amend their Complaint to add Worldwide or request documents related to Worldwide until October 2024.  *Id.* ¶ 10.  In short, Plaintiffs have failed to demonstrate that Defendants had a duty to produce documents related to Worldwide before Plaintiffs requested them for the first time in October 2024.

### 4.    Actual Suppression or Withholding

Because the movant must establish each factor, Plaintiffs' failure to show that Defendants had a duty to produce the Asset Purchase Documents ends the spoliation inquiry.  *Kuhar*, 2018 WL 6363747, at *5.  But for purposes of completeness, the Court will consider whether Plaintiffs have demonstrated that Defendants have actually suppressed or withheld the Asset Purchase Documents.

This factor requires the Court to determine whether Plaintiffs have proved that the spoliating party acted in "bad faith" in destroying, altering, or failing to produce evidence.  *Bull*, 665 F.3d at 79; *Van De Wiele*, 2015 WL 4508376, at *2.  The actual suppression standard requires "a showing of intent apart from establishing the alleged conduct as a matter of fact." *Masterank Wax, Inc. v. RFC Container, LLC*, No. 19-12245, 2022 WL 19927891, at *5 (D.N.J. Aug. 30, 2022) (citing *Bull*, 554 F.3d at 79).  "In some cases, even the nonproduction or failure to produce evidence has been held to have the same effect as destroying it – by evincing the party's fear 'that the contents would harm him.'"  *Masterank Wax*, 2022 WL 19927891, at *4 (citation and quotation omitted).  However, not all nonproduction of evidence constitutes

spoliation.  *Bull*, 665 F.3d at 73, 79.  "[S]poliation of documents that are merely withheld, but not destroyed, requires evidence that the documents are actually withheld, rather than – for instance – misplaced.  Withholding requires intent."  *Id.* at 79; *Mosaid*, 348 F. Supp. 2d at 337 (collecting cases construing "actual suppression to mean that the evidence must be intentionally or knowingly destroyed or withheld, as opposed to lost, accidentally destroyed or otherwise properly accounted for.").  Thus, Plaintiffs must prove that Defendants intentionally withheld or deprived Plaintiffs of the Asset Purchase Documents to suppress it in bad faith.  *See Bull*, 665 F.3d at 79; *Rodriguez v. Auto Zone*, No. 12-3916, 2014 WL 197894, at *12 (D.N.J. Jan. 14, 2014).

In an effort to meet its burden with respect to this factor, Plaintiffs maintain that they did not learn until September 11, 2024, for the first time, during the deposition of Nelson Rodriguez, of Defendants' contention that its liability is limited to post-acquisition profits, starting on April 1, 2020.  Pls.' Br., D.E. 61-1, at 10.  Plaintiffs also assert that Defendants did not admit their position on this liability issue until a meet-and-confer on October 22, 2024.  *Id.*  Plaintiffs contend that "Defendants affirmatively engaged in a campaign of obfuscation by producing information and documents suggesting that Defendants were liable for pre-April 1, 2020 trademark infringement damages."  *Id.*  Plaintiffs argue this leads to the conclusion that Defendants intentionally withheld the Asset Purchase Documents.  *Id.*

Defendants respond that they have not acted either with the intent to deprive Plaintiffs of necessary discovery or in bad faith in this litigation.  Defs.' Opp'n, D.E. 68, at 10-14.  Instead, they contend that they have been working with Plaintiffs throughout discovery to provide responses to all discovery requests so that Plaintiffs may obtain all information they seek.  *Id.*

The Court cannot find on the record before it that Defendants actually withheld any evidence for the same reasons expressed above with respect to Defendants' duty to produce. Plaintiffs never asked for information related to Worldwide or Defendants' pre-acquisition liability, and the information available to the Defendants, including the Plaintiffs' own pleading and interrogatory answers, led Defendants to reasonably believe that Plaintiffs were aware of Worldwide and that Defendants were not liable for pre-acquisition sales.

Once Plaintiffs notified Defendants, in October 2024, that they were seeking discovery and information related to Worldwide and the Assignment Agreement, Defendants made reasonable efforts to work with Plaintiffs to produce discovery responsive to Plaintiffs' requests, even as Defendants challenged the relevance of those requests. On that issue, the record reflects that before Plaintiffs filed this motion, and before the parties filed the joint discovery-dispute letter, Defendants had agreed to provide the Asset Purchase Documents, albeit in redacted form, to Plaintiffs. *See* Defs.' Ltr., Nov. 11, 2024, D.E. 55, at 5 n.6. By the time Defendants filed their opposition to this motion, they had produced to Plaintiffs redacted copies of the Asset Purchase Documents. *See* Mishra Decl., D.E. 68-1, ¶ 12. When Plaintiffs objected to the redactions, Defendants "offered compromises and solutions to get Plaintiffs the information they want without disclosing irrelevant and sensitive information of nonparties and former employees." *Id.* ¶ 13.

The instant motion more closely resembles a routine discovery dispute than an instance of spoliation or sanctionable withholding. As the record reflects, the parties did not present the related discovery dispute regarding the Asset Purchase Documents and related information to the Court until January 10, 2025. Joint Ltr., D.E. 75. Thus, when Plaintiffs filed this motion, the parties were actively engaged in meet-and-confer efforts toward resolution of whether the Asset

Purchase Documents and related information should be produced, and in what form/to what extent. For instance, Defendants assert they produced the Asset Purchase Documents, but in a redacted form and were working with Plaintiffs on what redactions were appropriate. For that matter, the Court did not rule on the discovery dispute and order Defendants to produce the Asset Purchase Documents until January 16, 2025, the same day Defendants filed their sur-reply to this motion. *See* Order, D.E. 80; Sur-Reply, D.E. 79. On this record, the Court cannot find that Defendants actually withheld any evidence as the parties were still working through whether the Asset Purchase Documents were relevant to this litigation when Plaintiffs filed this motion.

But even if this Court were to conclude that Defendants withheld the Asset Purchase Documents, Plaintiffs have failed to show that Defendants did so in bad faith. *See Bull*, 665 F.3d at 79 ("[S]poliation of documents that are merely withheld, but not destroyed, requires evidence that the documents are actually withheld, rather than – for instance – misplaced. Withholding requires intent."). Nothing in the record suggests that Defendants intended to hide or suppress the Asset Purchase Documents. As explained above, Defendants have offered a plausible explanation for why they did not produce the Asset Purchase Documents earlier: It was not clear to Defendants that Plaintiffs were seeking discovery related to Kelly Toys's acquisition of the Mark in 2020. On these facts, the Court cannot find that Defendants acted in bad faith or acted intentionally and knowingly in not producing the Asset Purchase Documents to Plaintiffs.

Even if Defendants erroneously limited their responses to discovery requests to their own sales of the Mark, at best that constitutes mere negligence. But negligence is not sufficient to justify a finding of spoliation. *See Bull*, 665 F.3d at 79 (there can be no spoliation when "negligence remains a reasonable explanation for everything that happened"). To carry their

burden, Plaintiffs must demonstrate that Defendants spoliated evidence so that it could not be used against them. *See Masterank Wax*, 2022 WL 19927891, at *4. Plaintiffs have not done so.

In sum, Plaintiffs have failed to meet their burden of demonstrating that Defendants intentionally withheld any information or documents to gain a litigation advantage or prejudice Plaintiffs in any way. *See Masterank Wax*, 2022 WL 19927891, at *4 ("In some cases, even the nonproduction or failure to produce evidence has been held to have the same effect as destroying it – by evincing the party's fear 'that the contents would harm him.'"). That this Court subsequently determined that the Asset Purchase Documents should be produced does not change this Court's conclusion. Any failure to produce the relevant documents sooner was because Defendants did not believe Plaintiffs' discovery requests called for them and Plaintiffs make no showing to the contrary.

**B.    Spoliation and Withholding of ESI under Federal Rule of Civil Procedure 37**

As noted above, the spoliation or withholding of ESI is analyzed under a distinct standard set by Rule 37. The parties rely on the traditional standards set forth by the Third Circuit in caselaw such as *Bull* and *Mosaid*. But for the sake of completeness, the Court also considers Plaintiffs' application under Rule 37.

**1.    Spoliation under Rule 37(e)**

The 2015 amendments to Federal Rule of Civil Procedure 37(e) created a uniform standard for determining whether spoliation of electronically stored information ("ESI") has occurred. *See* Fed. R. Civ. P. 37 Advisory Committee's note to 2015 amendment ("2015 Advisory Committee Notes"); *see also Bistrian v. Levi*, 448 F. Supp. 3d 454, 464-65 (E.D. Pa. 2020). Rule 37(e), as amended, provides as follows:

> (e) Failure to Preserve Electronically Stored Information. If electronically stored information that should have been preserved

24

in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
> > (A) presume that the lost information was unfavorable to the party;
> >
> > (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> >
> > (C) dismiss the action or enter a default judgment.

The 2015 Advisory Committee Notes to Rule 37(e) explain that Rule 37(e) "applies only if the information was lost because the party failed to take reasonable steps to preserve the information. . . . Because the rule calls only for reasonable steps to preserve, it is inapplicable when the loss of information occurs despite the party's reasonable steps to preserve." *See also Bistrian*, 448 F. Supp. 3d at 465 ("Because electronically stored information often exists in multiple locations . . . spoliation occurs only where the information is truly lost and not recoverable elsewhere.").  "It is self-evident that in order to obtain spoliation sanctions pursuant to Rule 37(e) spoliation must occur."  Plaintiffs, as the moving parties, bear the burden of proving that the ESI has been lost.  *Kavanagh v. Refac Optical Grp.*, No. 15-4886, 2017 WL 6395848, at *2 (D.N.J. Dec. 14, 2017) (first citing 2015 Advisory Committee Notes to Fed. R. Civ. P. 37(e); and then citing *Freidman v. Phila. Parking Auth.*, No. 14-6071, 2016 WL 6246814 (E.D. Pa. Mar. 10, 2016)).

As set forth above, the record clearly establishes that the Asset Purchase Documents have not been lost.  Plaintiffs' chief complaint is that Defendants wrongfully withheld them. Accordingly, spoliation sanctions under Rule 37(e) are not warranted.

### 2.    Withholding under Rule 37(c)

Federal Rule of Civil Procedure 37(c) authorizes the Court to sanction a party for failing to disclose certain information without substantial justification.  *Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 99 (D.N.J. 2006).  Rule 37(c)(1) provides as follows:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.  In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> > (A)  may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
> >
> > (B) may inform the jury of the party's failure; and
> >
> > (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

The purposes of each section of Rule 37 are to: "(1) penalize the culpable party or attorney; (2) deter others from engaging in similar conduct; (3) compensate the court and other parties for the expense caused by the abusive conduct; and (4) compel discovery and disclosure." *Wachtel*, 239 F.R.D. at 99 (first citing *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)); and then citing *Carlucci v. Piper Aircraft Corp.*, 775 F.2d 1440, 1453 (11th Cir. 1985)).

To determine whether a party has violated Rule 37(c)(1) and whether sanctions are warranted, a court must first determine whether there has been a violation of Rule 26(a) or Rule 26(e).  *See* Fed. R. Civ. P. 37(c)(1) (stating sanctions may be imposed "if a party fails to provide information or identify a witness as required by Rule 26(a) or (e)).  It is well-settled that a party's

failure to timely produce plainly relevant and responsive discovery, or to timely supplement that discovery when that party knows its responses are incomplete or incorrect, without substantial justification, may constitute withholding. *See, e.g.*, *Wilczynski v. Redling*, No. 12-4335, 2014 WL 5361916, at *5-6 (D.N.J. Oct. 21, 2014) (finding violation of Rule 37(c) where defendant first disclosed relevant documents in motion for summary judgment, and barring defendant from using those documents at trial).

Because Plaintiffs have not specifically argued for sanctions under Rule 37(c), they do not identify whether they rely on a violation of Rule 26(a), Rule 26(e), or both. As noted above, Plaintiffs' own conduct of this litigation did not reasonably cause Defendants to conclude that they had a duty to produce the Asset Purchase Documents. And when Plaintiffs did specifically seek them, the Defendants produced them in redacted form, even as Defendants objected to their relevance. That the Court determined on January 16, 2025, that certain of the Asset Purchase Documents were relevant, while some were not, does not yield a Rule 26 violation. To hold otherwise would eviscerate the distinction between a garden-variety discovery dispute where a party achieves a partial victory, and sanctionable conduct under Rule 37(c).

Even if Defendants violated Rule 26(a) or Rule 26(e) by failing to produce the relevant portions of the Asset Purchase Documents, the analysis above in Section IV(A)(3) establishes that the Defendants acted with substantial justification. Although Plaintiffs knew or should have known from the inception of this litigation that Worldwide owned and then transferred the Mark to Kelly Toys on March 31, 2020, Plaintiffs: (1) did not include Worldwide as a defendant, (2) did not seek discovery from Worldwide, (3) did not seek discovery of preacquisition sales by Worldwide, and (4) clearly represented in both their initial disclosures and response to supplemental interrogatory 11 that they sought as damages Defendants' wrongful profits under

15 U.S.C. § 1117(a). Moreover, at various points during the discovery process, Defendants informed and then reminded Plaintiffs that Worldwide was a distinct entity that first offered products bearing the Mark in November 2018, and produced documents that referenced Worldwide.

Accordingly, Plaintiffs have not satisfied their burden to establish that Defendants withheld or suppressed the Asset Purchase Documents in violation of Rule 37(c).

**V. CONCLUSION**

For the reasons set forth above, Plaintiffs' motion for discovery sanction, D.E. 61, is denied. An appropriate Order accompanies this Opinion.

_s/ Michael A. Hammer_
**Hon. Michael A. Hammer**
**United States Magistrate Judge**

**DATED:  April 24, 2025**