**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NECA LLC and KIDROBOT, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>JAZWARES, LLC and KELLY TOYS HOLDINGS, LLC,<br><br>Defendants. | Civil Action No. 23-3863 (SDW) (ADS)<br><br>**OPINION**<br><br>November 19, 2026 |

**WIGENTON**, District Judge.

Before this Court are Plaintiffs NECA LLC and Kidrobot, LLC's ("Plaintiffs") Motion for Reconsideration (D.E. 153 ("Pls.' Mov. Br.)) pursuant to Local Civil Rule 7.1 and Defendants Jazwares, LLC and Kelly Toys Holdings, LLC's Motion to Strike all jury demands and set the matter for bench trial (D.E. 159 ("Defs.' Mov. Br.)) pursuant to Federal Rule of Civil Procedure ("Rule") 39(a)(2).[1] Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331, 1332(a), 1338, 1367(a) and 15 U.S.C. §§ 1116 and 1121. Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Rule 78 and Local Civil Rule 78.1. For the reasons stated herein, Plaintiffs' Motion for Reconsideration is **DENIED**, and Defendants' Motion to Strike is **GRANTED**. This matter shall proceed as a bench trial beginning on January 11, 2027.

[1] Citations to "D.E." refer to docket entries in the Court's Electronic Case Filing System for this matter and any internal citations contained therein, unless otherwise indicated.

## I. BACKGROUND

The procedural history and factual background of this case are set forth in greater detail in this Court's May 27, 2026, opinion and are incorporated herein. (D.E. 146 ("Summary Judgment Opinion") at 1–4.)

Defendants moved for summary judgment on Plaintiffs' trademark infringement claims under the Lanham Act and related New Jersey law, and for partial summary judgment on the availability of the remedy of disgorgement. (D.E. 105 at 12.) This Court denied the motion. (Summary Judgment Opinion at 19.) In relevant part to the instant motion, Defendants challenged that Plaintiffs could prove the first element of Lanham Act trademark infringement: that the mark is "valid and legally protectable." (D.E. 105 at 19); *see E.T. Browne Drug Co. v. Cococare Prods., Inc.*, 538 F.3d 185, 191 (3d Cir. 2008) (listing the elements proving trademark infringement under the Lanham Act).[2]

This Court held there was a dispute of material fact as to whether Plaintiffs' "HUGME" trademark was valid and legally protectable. (Summary Judgment Opinion at 12–17.) Specifically, this Court held "HUGME" was not suggestive, citing a lack of evidentiary support that the mark required "imagination, thought or perception to reach a conclusion as to the nature of goods" because "HUGME" was suggestive of a "wide range of things." (*Id.* at 13.) This Court further held Defendants did not meet their burden to show no genuine issue of material fact as to whether "HUGME" was generic and that Plaintiffs demonstrated a genuine issue of material fact as to whether "HUGME was descriptive. (*Id.* at 15–16.) Plaintiffs move for reconsideration under Local Civil Rule 7.1, challenging this Court's ruling that "HUGME" is not suggestive as a matter of law.

[2] Defendants also moved for summary judgment on the third prong of Lanham Act infringement, likelihood of confusion, and on the availability of the equitable remedy of disgorgement, which this Court denied. (Summary Judgment Opinion at 17–19.)

(Pls.' Mov. Br. at 6-9.) Plaintiffs argue this Court committed clear error by holding that the imagination test requires an evidentiary showing concerning other products or incontestable status. (*Id.*) In the alternative, Plaintiffs argue this Court overlooked "ample" evidence of third-party use of "HUGME" products in the summary judgment record. (*Id.* at 9.)

Defendants move to strike all jury demands and set a bench trial and did so shortly after the parties completed briefing for Plaintiffs' motion for reconsideration. When Plaintiffs filed suit, they included in their prayer for relief a request "that each of the Defendant [sic] be ordered to account for and pay over to Plaintiffs the profits realized by Defendants and damages caused to Plaintiffs by reason of Defendants' unlawful acts herein alleged[.]" (D.E. 1 ("Compl.") at 19). Thereafter, Defendants sought discovery of the alleged damages through Interrogatories and Requests for Production. (D.E. 159-2, Declaration of Sourabh Mishra (Misrah Decl.), ¶¶ 2, 5.) In October 2024, Plaintiffs served a supplemental response to Defendants' Interrogatory 11 in which they "elect[ed] recovery of damages, pursuant to 15 U.S.C. § 1117(a), in the form of Defendants' wrongful profits." (D.E. 159-4 at 16–17.) Plaintiffs explained this election was "in lieu of Plaintiffs' lost profits" and used this election as a shield from further discovery, because "[i]n light of Plaintiffs' election . . . information related to Plaintiffs' costs and profits is not relevant . . . ." (Misrah Decl.), ¶ 3, Ex. A.) Following this election, Defendants agreed to cease discovery into Plaintiffs' profits, costs, alleged lost sales and related financial discovery. (*Id.* ¶ 5.)

## I. MOTION FOR RECONSIDERATION

### A. LEGAL STANDARD

To prevail on a motion for reconsideration, Plaintiffs must show "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court . . . [rendered the judgment in question]; or (3) the need to correct a clear error of law or fact or to

prevent manifest injustice." *Max's Seafood Café ex rel. Lou–Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). To succeed on the third pathway for reconsideration, "dispositive factual matters or controlling decisions of law" must be previously "brought to the court's attention but not considered." *D'Argenzio v. Bank of Am. Corp.*, 877 F. Supp. 2d 202, 207 (D.N.J. 2012) (quoting *P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*, 161 F. Supp. 2d 349, 353 (D.N.J. 2001)). A motion for reconsideration "may not be used to relitigate old matters" and a movant must "show more than a disagreement with the Court's decision." *P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*, 161 F. Supp. 2d 349, 352 (D.N.J. 2001) (quoting *G-69 v. Degnan*, 748 F. Supp. 274, 275 (D.N.J. 1990)). Reconsideration is available only if the matters or decisions overlooked might reasonably have altered the result that was reached. *G-69*, 748 F. Supp. at 275.

**B. DISCUSSION**

This Court considered and rejected Plaintiffs' argument that "HUGME" is suggestive because the mark, "in isolation . . . provides virtually no information about the nature of the product." (Summary Judgment Opinion at 13.) In support of "HUGME"'s suggestiveness, Plaintiffs argued the mark could describe myriad products, including "cozy clothing, furniture, baby related goods or services, elder care, dating services, or therapeutic services[,]" which this Court declined to credit in the absence of record evidence. (D.E. 120 "Pls. Summ. J. Opp'n Br." at 20–21; Summary Judgment Opinion at 13–14.) Here, Plaintiffs offer no new authority and opt to simply relitigate their previous motion.

Plaintiffs read the Summary Judgment Opinion to impose an absolute requirement of evidentiary proof of third-party use. This is not so. This Court found that, having raised the argument of third-party use, Plaintiffs' lack of evidence was detrimental to their argument. (Summary Judgment Opinion at 13–14.) The imagination test asks whether the term "requires

imagination, thought or perception to reach a conclusion as to the nature of [the] goods." *A.J. Canfield Co. v. Honickman*, 808 F.2d 291, 297 (3d Cir. 1986) (quoting *Stix Prods., Inc. v. United Merchants & Mfrs., Inc.*, 295 F. Supp. 479, 488 (S.D.N.Y. 1968)). Courts examine third-party use of the mark in applying the imagination test when there is record evidence to examine. *See id.* at 298 (noting a fact-finding by the district court that many food products are designated by the terms "chocolate fudge" and discussing a competing product cited by the defendant); *Dranoff-Perlstein Assocs. v. Sklar*, 967 F.2d 852, 858 n.12 (3d Cir. 1992) (noting record evidence of twenty additional competitors using variations on the mark). Plaintiffs do not have record evidence here and cannot create an issue of fact out of attorney argument. Further, if it were true that the imagination test "looks *solely* to the relationship between the mark and the plaintiff's associated goods or services," and not at all at third-party use, Plaintiffs would gain little by arguing that the "HUGME" mark could describe the other products they name. (Pls.' Mov. Br. at 7) (emphasis added).

Plaintiffs cite no new authority germane to whether the "HUGME" mark is valid and protectable and relitigate their interpretation of *Strike Holdings*, which this Court rejected. *Strike Holdings LLC v. UC Strikes, LLC*, 2005 WL 1799412 (E.D. Pa July 28, 2005); (Pls. Mov. Br. at 5–6.) Plaintiffs argue this Court overlooked "ample" evidence of third-party use in the summary judgment record and cite to a passage in Defendants' Exhibit 48, a trademark report which shows predominantly inactive trademark records of variants of "HUGME" used in connection with other products. (*See* D.E. 109-8 at 31–389; Pls. Mov. Br. at 6). Other exhibits submitted by Defendants and not referenced by Plaintiffs in either their summary judgment briefing or on reconsideration show non-trademarked uses of variants of the mark on throw pillows, blankets, and pregnancy pillows. (*See* D.E. 109-8 at 1–30, Defs. Exs. 43–47.)

As a procedural matter, Plaintiffs did not reference Exhibit 48, the admissibility of which they disputed, in their summary judgment briefing, and Exhibit 48 does not entirely correspond to the items Plaintiffs argued "HUGME" could describe. *Compare* Pls. Summ. J. Opp'n Br. at 20–21, *with* Defs. Ex. 48). Plaintiffs similarly made no reference to Defendants' other exhibits, even on reconsideration. It is and was Plaintiffs' burden to detail record evidence to controvert movant's position, and it is not on this Court to scour the record to find issues of fact. *Starr v. Katz*, No. 91-3365, 1994 WL 548209, at *13 (D.N.J. Oct. 5, 1994). A motion for reconsideration is not a "second bite at the apple" to include evidence Plaintiffs could have referenced in the first instance. *Holliday v. City of Elizabeth*, No. 13-1006, 2019 WL 325541, at *4 (D.N.J. Jan. 23, 2019).

Finally, Defendants' Exhibits 43 through 48 contain nothing that changes this Court's view that the "HUGME" mark is not suggestive. Given the similarities between throw pillows, pregnancy pillows, blankets, and other products in Exhibit 48 and Plaintiffs' products, these exhibits provide additional support that the "HUGME" mark "forthwith conveys an immediate idea of the ingredients, qualities or characteristics of the goods." *Canfield*, 808 F.2d at 297 (quoting *Stix Prods.* 295 F. Supp. at 488).

## II. <u>MOTION TO STRIKE ALL JURY DEMANDS</u>

### A. <u>LEGAL STANDARD</u>

When a jury trial is demanded, Rule 39(a)(2) permits a bench trial instead when the court, on a motion or on its own, "finds . . . there is no federal right to a jury trial." The Seventh Amendment creates a right to civil jury trials in federal court. *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 247 (3d Cir. 2013). To determine whether there is a federal Seventh Amendment jury right, this Court first "compare[s] the statutory action to 18th-century actions brought in the

courts of England prior to the merger of the courts of law and equity" and then "examine[s] the remedy sought and determine[s] whether it is legal or equitable in nature." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 40–42 (1989) (quoting *Tull v. United States*, 481 U.S. 412, 417–18 (1987)). The second step of this inquiry is more important than the first. *Id.* The jury trial right attaches only to suits at common law seeking legal remedies as opposed to equitable remedies. *See id.* at 41–42.

**B. <u>DISCUSSION</u>**

The parties do not meaningfully address the first part of the two-step inquiry, and the Lanham Act is silent on the issue of trial by jury. *HomeVestors of Am., Inc. v. Warner Bros. Discovery,* No. 22-1583, 2025 WL 2223332, at *1 (D. Del. Aug. 5, 2025). The second step, then, is decisive. Plaintiffs seek injunctive relief, cancellation of Defendants' trademark registration, attorneys' fees, and "damages…in the form of Defendants' wrongful profits…." (Compl. at 17–19; D.E. 159-4 at 16–17.) There is no dispute that any but the last of these is equitable in nature.

**i. <u>Plaintiffs Have No Seventh Amendment Jury Right for a Profits-Only Claim</u>**

The traditional principles of law and equity are instructive in categorizing the kind of relief Plaintiffs are seeking when they say "damages…in the form of Defendants' wrongful profits." These principles show that Plaintiffs seek an equitable remedy when they seek a profits-only remedy for Defendants' alleged Lanham Act violations and that no Seventh Amendment jury right attaches.

As the Supreme Court recently reiterated: the legal remedy of damages aims "to put the plaintiff in as good a position as [the plaintiff] would have been in" had the offending conduct not occurred. *Sripetch v. Sec. & Exch. Comm'n*, 608 U.S. 555, 564 (2026). Damages are measured by the plaintiff's loss. *Id.* In contrast, "after a showing that the defendant interfered with the

plaintiff 's legally protected rights, courts sitting in equity have long issued remedies designed to 'depriv[e] wrongdoers of their net profits from unlawful activity.'" *Id.* A victim seeking an equitable remedy need not show they have suffered a corresponding loss. *Id.*

The Lanham Act provides that plaintiffs may seek to recover both "(1) defendant's profits" and "(2) any damages sustained by the plaintiff." 15 U.S.C. § 1117(a)(1)–(2). The statutory text mirrors the distinction between equitable and legal remedies in how it calculates the monetary award in these sections: "in assessing profits the plaintiff shall be required to prove defendant's sales only;" and "defendant must prove all elements of cost or deduction claimed" while "in assessing damages the court may enter judgment . . .for any sum above the amount found as **actual damages**." *Id.* § 1117(a) (emphasis added).

Here, Plaintiffs seek Defendants' profits from use of the "HUGME" mark, which they describe as "damages." In their pleading, Plaintiffs sought both an accounting of profits and an award of compensatory damages for harm suffered as a result of Defendants' conduct. (*See* Compl. at 19). However, Plaintiffs changed that position in October 2024 when they elected to pursue the recovery of Defendants' wrongful profits "in lieu of damages," disclaimed the relevance of their own pecuniary loss, and cut off discovery into those losses. (Mishra Decl. ¶¶ 3-5, Exs. B–C). Thus, Plaintiffs no longer seek compensation for harm they directly suffered, as they seek the disgorgement of Defendants' profits within the traditional "heartland of equity." *Liu v. Sec. & Exch. Comm'n*, 591 U.S. 71, 80 (2020). Labelling the Defendants' profits as a "proxy" for Plaintiffs' damages does not transform them into a legal remedy. *Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1352 (11th Cir. 2019) (affirming strike of jury demand). Further, it would be incongruous to allow Plaintiffs to "object to the introduction of any evidence

related to its actual injuries" and then "insist on a jury trial because it is seeking redress for that same harm." *Id.* at 1360.

Plaintiffs argue that *Kennedy v. Lasko*, 414 F.2d 1249 (3d Cir. 1969), controls the outcome here. (D.E. 162 at 7–10). Reliance on *Kennedy* is misplaced because the Third Circuit considered a different question: whether a jury trial is available in a suit for patent infringement "which seeks *both* monetary and injunctive relief." *Kennedy v. Lasko*, 414 F.2d 1249, 1250 (3d Cir. 1969) (emphasis added). Plaintiff's prayer for relief in *Kennedy* confirms there were live legal claims for damages independent of defendant's profits, as plaintiff sought: "an 'accounting for 'profits' **as well as 'damages'** resulting from the infringement" and "Judgment for $200,000 . . . 'in case the total profits made by the sale of the infringing machines do not aggregate that sum[.]'" *Id.* at 1250–51 (emphasis added). A claim for recovery in the amount of a freestanding $200,000, divorced from the defendant's profit, goes a step beyond disgorgement and into legal damages.

Plaintiffs primarily rely on *Kennedy*'s broader corollary that "no distinction can be drawn" between the right to a "jury trial for damages" that would justify denying a jury trial on the basis that "damages . . .are recoverable in an action at law . . . whereas profits have their origin in equitable principles[.]" *Id.* at 1253. But this corollary follows the *Kennedy* Court's interpretation of *Dairy Queen, Inc. v. Wood*, 369 U.S. 469 (1962), which it understood to mean only that "the doctrine that an action which seeks **both** damages and equitable relief is predominately equitable and therefore may not be tried by a jury, has been reversed." *Kennedy*, 414 F.2d at 1252 (emphasis added). It does not extend to a case in which only equitable relief is available.

Plaintiffs' *Dairy Queen* argument fails for similar reasons. *Dairy Queen* centered on a dispute in which it was possible to construe petitioners' complaint according to two theories, the most natural of which the Court described as "to recover whatever was owed [petitioners] under

the contract as of the date of its purported termination plus damages for infringement of their trademark since that date." *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 476 (1962). The alternative theory was for full recovery based on both theories, to "recover both the debt due under the contract and damages for trademark infringement for the entire period of the alleged breach including that before the termination of the contract." *Id.* Ultimately, the Court found it unnecessary to resolve the ambiguity, because that petitioner's claim was an "action on a debt allegedly due under a contract" which was "a claim wholly legal in its nature however the complaint is construed." *Id.* at 477. It was of no issue that plaintiff's "complaint [was] cast in terms of an 'accounting'" because "the constitutional right to trial by jury cannot be made to depend upon the choice of words used in the pleadings." *Id.* at 477–78. *Dairy Queen* involved a "joinder in one complaint of prayers for both legal and equitable relief." *Id.* at 481 (Harlan, J. concurring); *see also Newfound Mgmt. Corp. v. Lewis*, 131 F.3d 108, 116 (3d. Cir. 1997) (quoting *Ross v. Bernhard*, 396 U.S. 531, 537–38 (1970)) (summarizing the holding of *Dairy Queen* as "where equitable and legal claims are joined in the same action, there is a right to jury trial on the legal claims . . . .").

Unlike *Dairy Queen*, the distinction between "claims for damages and profits is not simply semantic," in this case, because Plaintiffs "do[] not seek money for its injury; rather, [Plaintiffs] seek[] the amount by which [Defendants] [were] enriched from infringing . . .and . . . an order requiring restitution of such money," a claim which is equitable in nature. *Am. Cyanamid Co. v. Sterling Drug, Inc.*, 649 F. Supp. 784, 789 (D.N.J. 1986). *Dairy Queen*'s holding does "not seem to extend to cases where the plaintiff seeks disgorgement unaccompanied by a legal remedy." *HomeVestors of Am., Inc. v. Warner Bros. Discovery, Inc.*, 2025 WL 2223332, at *3 (D. Del. Aug. 5, 2025). Construing Plaintiffs' claim for relief as purely equitable is in line with *Dairy Queen*

because it looks to the substance of the relief sought, not the "choice of words used in the pleadings." *Dairy Queen*, 369 U.S. at 477–78.

District courts do not uniformly agree that Lanham Act profits claims are solely equitable. *See AFAB Indus. Serv., Inc. v. Pac-W Distrib. NV LLC*, 2023 WL 6989885, at *4 (E.D. Pa. Oct. 23, 2023) ("Most courts have interpreted *Dairy Queen* for the proposition that a claim for profits in a trademark case is legal in nature."); *Ideal World Mktg., Inc. v. Duracell, Inc.*, 997 F. Supp. 334, 339 (E.D.N.Y. 1998). However, this is the consensus of the majority of district courts in the Third Circuit. *See Am. Cyanamid Co.*, 649 F. Supp. at 789; *Castrol, Inc. v. Pennzoil Quaker State Co.*, 169 F. Supp. 2d 332, 344 (D.N.J. 2001) ("A plain reading of the Lanham Act remedy section unqualifiedly weighs against [plaintiff's] interpretation that they are entitled to a jury trial on the disgorgement of profits issue."); *Kars 4 Kids Inc. v. Am. Can!*, No. 14-7770, 2019 WL 2078670, at *2 (D.N.J. May 10, 2019) ("The Court also determines that this claim is equitable in nature, and for which no right to a jury exists."). This rule was also adopted by every court of appeals to squarely address this issue, including the Eighth, Ninth, and Eleventh Circuits, which considered and rejected versions of Plaintiffs' interpretation of *Dairy Queen*. *See Ferrari S.P.A. v. Roberts*, 944 F.2d 1235, 1248 (6th Cir. 1991) (affirming denial of motion for jury trial); *Nat'l Presto Indus., Inc. v. U.S. Merchs. Fin. Grp., Inc.*, 121 F. 4th 671, 680 (8th Cir. 2024) (affirming denial of request for jury trial and distinguishing *Dairy Queen*); *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1075 (9th Cir. 2015) ("Contrary to Plaintiffs' argument, *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962) does not broadly hold that a Lanham Act claim for disgorgement of profits is a legal claim."); *Hard Candy, LLC*, 921 F.3d at 1359–60(affirming denial of jury trial and distinguishing *Dairy Queen*).

## III. CONCLUSION

For the reasons stated above, Plaintiffs' Motion for Reconsideration is **DENIED** and Defendants' Motion to Strike is **GRANTED**. An appropriate order follows.

/s/ Susan D. Wigenton
**SUSAN D. WIGENTON, U.S.D.J.**

Orig: Clerk
cc: Parties
Alex D. Silagi, U.S.M.J.